## EMERSON v. SMITH.

### THE ANTARES.

### No. 4392.

Circuit Court of Appeals, Third Circuit. Oct. 11, 1930.

Rehearing Denied Dec. 1, 1930.

Howard M. Long, of Philadelphia, Pa., for appellant.

Willard M. Harris, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and AVIS, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court sustaining the claim of appellee to a maritime lien for storage, material, and supplies against the appellant for $256.-36 and costs. This suit arose over a bill for repairs and materials furnished to the yacht Antares, by the appellee, William P. Smith, of Tuckerton, N. J. While the yacht was in Atlantic City, Henry Martin sold her to the appellant, Emerson, under the representation that there was no lien or claim against her. Emerson went to Tuckerton to see Smith shortly after he had purchased her. What took place between Emerson and Smith at Tuckerton is somewhat in dispute. Smith

says that Emerson said to him, "If Martin don't pay it (Smith's bill), I will," and that he replied, "I guess Martin will pay—always has."

Mr. Emerson's testimony as to what happened follows: .

"Q. What happened when you got there? A. Mr. Mathis went to look Mr. Smith up, and he came down to the wharf. Now, this boat sits up above the wharf considerable, and being a little heavy, and cozy, I didn't get up on the wharf. I sit there on the boat, and was introduced to him, and brought that subject up at once with Mr. Smith.

"Q. What subject? A. The subject if he had a bill against this boat.

"Q. What did he say? A. Mr. Smith replied that he had a small bill. How much it was, well, he didn't tell me. So then—I said, 'What's the amount?' 'It isn't any great amount,' he said, 'That's a private matter, and I will take Mr. Martin for that.' I told him I wanted to pay him, however, if there was any bill there, I wanted to pay him then and there; I didn't want anything hanging over this boat, that I had a chance to deduct it from the check. The other conversation wasn't relative to this; it was simply the covering and taking care of the boat.

"Q. What did he say?

"Mr. Harris: I object to that.

"By Mr. Long:

"Q. All right. When you say the check, you mean the $9,000 check you have in your hand? A. Yes.

"Q. When was that check paid? A. That check wasn't paid then until I came back on the morning of the 16th—so marked by the cashier of the bank; that was according to telephone conversation; marked on the back of the check and paid on the 16th, and charged to my account on—Mr. Smith told us positive he would look to Mr. Martin."

This took place on July 14, 1927. On August 22, 1928, Mr. Emerson wrote Mr. Smith as follows:

"Mr. William Smith,
"Tuckerton, N. J.

"Dear Sir:

"Your bill received. When I was at your place a year ago you did not tell me there was a bill unpaid by Mr. Martin. Martin also assured me there was none.

"I have written Martin a short letter in order to force him to pay, a copy of which I enclose. Now, follow it up without delay and make a demand on him and let me hear how you come out.

"You should have given some notice to me in order to make your claim binding and I could have held up the payment.

"Best regards,     Victor Lee Emerson."

Mr. Smith replied on August 27, 1928, as follows:

"Mr. Victor Emerson,
"6381 Overbrook Avenue,
"Philadelphia, Pa.

"Dear Sir:

"Your letter of August 22 regarding the bill of $221.00 against the Andares has been received.

"If you will look back to the evening you was at my place you will remember that Captain Mathis told me in your presence that Mr. Martin told him to tell me that he would send me a check and you said that you would pay it if he did not, and I told you I thought he would settle it.

"I am today writing to Mr. Martin again requesting him to settle this bill, a copy of which I am sending to you.

"Yours very truly,
                "William P. Smith."

Floyd Mathis, who was captain of the yacht, was present at Tuckerton when the conversation took place between Mr. Emerson and Mr. Smith. His testimony as to what took place follows:

"Q. Coming down to the arrival of this yacht at Tuckerton, will you kindly tell the Court what took place, and what was said, and who was present at any conversation.

"Mr. Long: Give us the date of the conversation, will you?

"A. Mr. Smith and I, we went and tried to get the little boat, and we got the little boat at the dock, and Mr Emerson came out. * * *.

"By Mr. Harris:

"Q. Where was Mr. Emerson? A. Right next to the dock.

"Q. Was he on the dock? A. Yes; he was on the dock. The boat laid right along the dock.

"Q. Who was present? A. Mr. Smith, and I, and Emerson talked there a little while, and we were talking about the boat, and who bought her, and I told Smith he had bought her. That's all—maybe a little more; I couldn't tell you. I was busy, and he wanted to get out of there—it was hot in the creek —and we went out that night.

"Q. Was that all the conversation at that time? Did you have any conversation in regard to the bill against this boat at the time?

A. I told Mr. Emerson about that bill several times. I told him that bill was a lien against my wages.

"Q. Was that before or after the sale? A. That was after he bought her, and then I talked—I don't know how many times—and I told Martin about sending Captain Smith a check right away because he would tie the boat up before she left Atlantic City.

"Q. Coming up to the conversation on the pier, what was said to Mr. Smith by Mr. Emerson about this bill, and Mr. Smith's reply? A. He just told Mr. Smith, 'If Martin don't pay, I will see you get it,' or something like that.

"Q. What did Mr. Smith say—'All right,' and let it go? A. He wasn't there very long; a very short time.

"Q. There was no one else present than you three? A. No; not on the dock there. The whole gang was aboard. I don't know how many of these fellows were ashore."

■ The learned trial judge said that what Smith, the libelant, meant by his statement to Emerson was that he would not give up his lien, but at the same time refrained from saying anything against Martin, with whom he had done business, but the claimant did not understand him and thought that the libelant meant that he would waive his lien against the yacht and look entirely to Martin. He held, however, that an expression of confidence in Martin was not a release of his lien. We agree with the trial judge that "estoppel or an equitable release required more than" an expression of confidence that Martin would pay the bill. Under the provisions of the Act of June 5, 1920, c. 250, § 30, subsec. S, U. S. Code, title 46, § 974 (46 USCA § 974), known as the Ship Mortgage Act, the furnisher of repairs and supplies may waive his lien against a vessel.

The real question is whether or not Smith did waive the lien. The trial judge found that he did not, and this finding was based upon the assumption that the testimony of both Smith and Emerson as to what occurred when they met at Tuckerton was true, but that they misunderstood each other.

■ Assuming, however, that both Smith and Emerson testified to the truth of what took place at Tuckerton as they remembered it, we must conclude that the memory of one of them was inaccurate. Emerson did say, "If Martin don't pay it, I will," or he did not. Smith said that he did, and he repeated that statement in his letters both to him and to Mr. Long, his proctor, at a time when it might have been thought that the case would be settled and not brought to trial. Captain Mathis, a disinterested witness, testified to the same effect. On the other hand, Mr. Emerson testified that Smith said he had a small bill against the yacht but gave the impression that it was of no "great amount," was a "private matter," and that he would "take Mr. Martin for that." But when he wrote to Smith on August 22, 1928, he said to him: "When I was at your place (Tuckerton) a year ago, you did not tell me there was a bill unpaid by Martin." These two statements on the same subject by Mr. Emerson are contradictory and indicate that it is Mr. Emerson's memory that is poor and inaccurate. There is no explanation, so far as we can ascertain, as to why he went to Tuckerton, if it was not to see Smith about a bill which Captain Mathis told him Smith had against the yacht.

We agree with the District Court that the evidence shows that Mr. Smith did not waive his lien against the yacht Antares. The decree is affirmed.